UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES COLLINS, | Case No. 1: 18 CV 2861 |
| Plaintiff, | |
| | JUDGE CHRISTOPHER A. BOYKO |
| v. | |
| KEITH FOLEY, *et al.*, | <u>MEMORANDUM OF OPINION</u> |
| | <u>AND ORDER</u> |
| Defendants. | |

*Pro se* Plaintiff James Collins, a state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 against several officials of the Grafton Correctional Institution (GCI) and Grafton Reintegration Center (GRC): GCI Deputy Warden Keith Foley; GCI Institutional Investigator Steve Weishar; GRC Deputy Warden Jennifer Gillece; GRC Warden Lashann Eppinger; GCI Lt. Costello; and GCI Unit Management Chief Richard Roddick. (Doc. 1.) Collins claims that his constitutional rights were violated in connection with a prison disciplinary hearing in which he was found guilty of attempting or planning an escape, resulting in an increase in his security-level status and transfer to a maximum-security prison. He submits numerous supporting exhibits. (Docs. 1-1 – 1-7.) Collins requests preliminary and permanent injunctive relief as well as money damages. (Doc. 1 at 33.) For the following reasons, the Complaint is dismissed.

## BACKGROUND

On July 13, 2016, a confidential informant told Defendant Investigator Weishar that Collins and three other inmates were planning to escape from GRC, a reintegration center in

Grafton, Ohio, that provides inmates with increased autonomy and freedom of movement, specialized housing and other privileges, including networking and mentoring opportunities with private citizens. (Doc. 1-5, Ex. E (Conduct Report); Doc. 1 at 24.) According to Collins, at that time, he had been incarcerated at GRC for more than two years "without incident," received more than 100 program completion certificates and achievement letters and was scheduled for a parole hearing in just a few months. (Doc. 1 at 14, 24.)

On October 3, 2016, Investigator Weishar filed a Conduct Report charging Collins with attempting or planning an escape. (Doc. 1-5, Ex. E (Conduct Report).) The other three inmates were also charged. (Doc. 1 at 17.) Weishar reported that the informant alleged the inmates had hidden gloves and printed maps of GRC and surrounding areas to aid in the escape. (Doc. 1-5, Ex. E (Conduct Report).) An investigation ensued in which prison official searched computers, performed "shakedowns," and subjected the inmates to a lie-detector test called a Computer Voice Stress Analyzer (CVSA). (*Id*.) Collins agreed to take the CVSA test. (Doc. 1-4 at 7 (Disposition of Grievance).) A CVSA test also was administered to the confidential informant. The informant's test showed no deception; Collins' test indicated he was being deceptive about his involvement in the escape plan. (Doc. 1-5, Ex. E (Conduct Report).)

On October 7, 2016, the Rules Infraction Board (RIB) conducted a hearing on Collins' charges. The RIB considered the confidential statement and the informant's CVSA test results. (*Id*.) Collins states that Investigator Weishar testified at the hearing that prison officials found no physical evidence of an attempted or planned escape as a result of the searches. (Doc. 1 at 9-10.) Collins introduced his own evidence, including a letter to Investigator Weishar from one of the other three inmates charged (Doc. 1-5, Ex. A); a letter from Collins to Defendant Warden

2

Eppinger (*id*., Ex. C); and information showing the CVSA test is unreliable (*id*., Ex. J.). (Doc. 1 at 18.) Collins claims he requested but was denied an opportunity to read the confidential statement. (*Id*. at 13-14.)

On October 13, 2016, the RIB found Collins guilty of the escape charge based on the confidential statement and the confidential informant's CVSA test results. (Doc. 1-4 at 7 (Disposition of Grievance).) As a result, Collins' security level was increased from one, the lowest, to four, the highest, and he was transferred to a maximum-security prison, the Southern Ohio Correctional Facility, where he currently is incarcerated. (Doc. 1-5, Ex. S (Reclassification and Transfer Request); Ex. R (Notice of Inter-Institutional Transfer).) Further, in January 2017, the Ohio Parole Board considered the escape infraction as a factor in its decision denying Collins parole and imposing an additional thirty-six months' imprisonment until the next parole hearing (*Id*., Ex. H (Ohio Parole Board Decision and Minutes).)

Collins appealed the RIB decision, but was unsuccessful. (*See, e.g., id.,* Ex. K (Warden's Decision on Appeal), Exs. L and M (Department of Rehabilitation and Correction letters), Ex. Z (Notice of Disciplinary Appeal); Doc. 1-4, Ex. AA (Informal Complaint, Grievance).)

Collins filed the Complaint now before this Court on November 6, 2018, alleging that the Defendants violated his constitutional rights in charging, investigating and trying him for the escape infraction.[1] (Doc. 1.) The crux of Collins' Complaint is that the confidential informant, a fellow inmate, falsely implicated Collins and the three others in the planned escape in exchange

---

[1] Collins originally filed his Complaint in the United States District Court for the Southern District of Ohio. (*See* Doc. 1.) On December 12, 2018, the Southern District Court transferred the case to this Court, where venue is proper as all events relating to Collins' claims occurred while he was incarcerated at a prison in Lorain County, Ohio, which is within this Court's district. (Doc. 6.)

for leniency in the informant's own disciplinary matters and to retaliate against Collins and the others for "preventing [the informant] from engaging in nefarious activities in the areas [they] were assigned to work as program aids and facilitators" at GRC. (*Id*. at 5.) Moreover, Collins claims Defendants Deputy Wardens Foley and Gillece and Investigator Weishar had a "special relationship" with the informant and gave him "special privileges" and assistance with his disciplinary problems. (*Id*.) Finally, Collins alleges that the Defendants colluded with each other and acted on their own to impede the prison's investigation of the escape charge and to undermine the fairness of the RIB hearing. (*Id*.)

Collins asserts twenty-seven separate claims. (*See* Doc. 1 at 28-32.) First, he claims that the Defendants violated his due process rights in connection with his escape violation during the course of the prison's investigation, RIB hearing and disciplinary actions. Specifically, Collins alleges: Deputy Warden Foley was not an impartial decisionmaker on the RIB panel; Deputy Wardens Foley and Gillece, Warden Eppinger, Investigator Weishar and Lt. Costello "colluded" to "clear their informant and obtain an arbitrary guilty verdict" and "cover up" Weishar's incompetence in investigating the matter; Investigator Weishar was biased as the informant's "handler", withheld crucial evidence, knowingly filed a false Conduct Report, knowingly used invalid CVSA tests, perjured himself at the RIB hearing and intentionally failed to preserve evidence; Deputy Warden Gillece hid evidence and permitted an invalid CVSA test result to "validate" the informant; Lt. Costello removed evidence from the record that Collins submitted to the RIB and prevented Collins from submitting evidence that discredited the informant; Warden Eppinger allowed officers under his care to knowingly file a false Conduct Report and pre-determined Collins guilty of the escape charge, instructed his subordinates to find Collins

4

guilty, helped his subordinates cover up their incompetence regarding this matter and used an invalid CVSA test result to validate the informant; UMC Roddick allowed a security-level increase that was time-barred; and Investigator Weishar and Deputy Warden Foley "conspired" to manipulate the invalid CVSA test results to clear the informant and to target Collins and the other inmates charged with attempted escape. (*Id*.)

Collins also asserts that Deputy Warden Foley and Investigator Weishar violated his equal protection rights by "not treating [him] the same" as the informant and "looking over camera footage" and "setting up a lie-detector test" to help the informant. Investigator Weishar failed to investigate Collins' defense, but assisted the informant with his defense. (*Id*. at 28, 30.)

Finally, Collins contends certain Defendants retaliated against him in violation of the First and Fourteenth Amendments. He claims: Deputy Warden Foley and Investigator Weishar retaliated against him for "speaking out against" the informant; and Deputy Warden Gillece retaliated against him for the same reason by removing eleven programs from his institutional file and allowing an illegal security-level increase. (*Id*. at 28, 30, 32.)[2]

**STANDARD OF REVIEW**

*Pro se* pleadings must be liberally construed and are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, *pro se* plaintiffs must still meet basic pleading requirements and this Court is not

---

[2] Collins also asserts that his Eighth Amendment rights were violated. (*See* Doc. 1 at 28, 30-32.) But he does not allege any facts or legal theory to support an Eighth Amendment claim. The Court, therefore, will not address Collins' summary allegations of Eighth Amendment violations. *See, e.g., Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (a court is not required to accept summary allegations or unwarranted conclusions in determining whether a complaint states a claim for relief).

5

required "to conjure allegations" on their behalf. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation omitted).

To avoid dismissal, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The "allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And they must be sufficient to give defendants "fair notice of what [the plaintiff's] claims are and the grounds upon which they rest." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Merely stating legal conclusions or reciting the elements of a cause of action also will fail to meet this pleading standard. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### A. Collins' Claims Are Barred by the Statute of Limitations

As a threshold matter, it is clear on the face of the Complaint that the statute of limitations on Collins' claims expired before he filed this action. There is a two-year statute of limitations on claims raised under § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 275–276 (1985) (holding that federal courts must apply the state statute of limitations for personal injury actions to § 1983 claims); *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (Ohio's two-year statute of limitations for personal injury claims applies to § 1983 actions). Collins' claims all relate to his disciplinary conviction for attempted or planned escape. The RIB determined Collins' guilt of the escape charge on October 13, 2016. (*See* Doc. 1-5, Ex. K (Warden's

Decision on Appeal).) Yet Collins did not file his Complaint until November 6, 2018, nearly one month after the statute of limitations on those claims had expired. Collins' claims, therefore, are time-barred and the Complaint must be dismissed for that reason. *See Fraley v. Ohio Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998) (affirming *sua sponte* dismissal of *pro se* §1983 action filed after two-year statute of limitations for bringing such an action had expired).

### B. No Actionable § 1983 Violation

The Complaint also must be dismissed because it fails to allege any plausible constitutional claim upon which Collins may be granted relief under § 1983. *See* 42 U.S.C. § 1983; *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001) (in order to state a claim for relief under § 1983, a plaintiff must allege a violation of rights guaranteed by the Constitution or laws of the United States).

#### 1. Due Process

A prison disciplinary proceeding does not give rise to a constitutionally-protected liberty interest triggering constitutional due process protections unless the discipline imposed results in a withdrawal of good time credits or constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

Collins claims his discipline for the escape infraction resulted in "atypical hardships." (Doc. 1 at 14, 21.) He alleges that as a result of his violation, he was reclassified from the lowest to highest security level; transferred to a maximum-security prison that was far from his family, allowed only one hour outside his cell and precluded any chance of obtaining parole; and denied parole in part because of the violation. (*Id*.) The Sixth Circuit has expressly held, however, that

7

these disciplinary actions – reclassification to maximum security status and transfer to a maximum-security prison – do not constitute atypical and significant hardships that infringe on due process rights because they are "ordinary incidents of prison life" and do not "inevitably affect the duration of [the prisoner's] sentence." *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001). The circuit court also rejected Collins's argument here that the parole board will not release prisoners who are classified as maximum security. *Id.* at 440-41. It explained that this may be the parole board's policy, but it is not a matter of Ohio law; the effect of a disciplinary conviction on a prisoner's chances for parole, therefore, "is a collateral consequence and does not create a liberty interest." *Id.* This is so even where the plaintiff alleges he was falsely accused of the misconduct. *See Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("even if the disciplinary report was false . . . a prisoner has no constitutionally protected immunity from being wrongly accused"); *Mujihad v. Harrison*, No. 97-6366, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998) ("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983"). *See also Reeves v. Mohr*, No. 4:11 CV 2062, 2012 WL 275166, at *2 (N. D. Ohio Jan. 31, 2012) (finding no plausible due process claim where a prisoner alleged he was charged with a conduct violation as a result of false allegations by another inmate and was found guilty of the charges on the basis of fabricated polygraph tests).

Moreover, even if the disciplinary actions of which Collins complains were sufficient to trigger constitutional due process protections, the Complaint on its face indicates that he received adequate process. Federal courts' ability to review determinations of prison disciplinary boards is very restricted. A federal court must uphold a disciplinary board's determination as consistent

with due process as long as there is "some evidence" to support the board's decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Instead, the standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board," *id*. at 455-56, even when the evidence used against the prisoner "might be characterized as meager," or where there is no direct evidence linking him to the conduct charged. *Id.* at 457. Although Collins disagrees with the RIB's reliance on CVSA test results, they constitute "some evidence" supporting the board's determination. This Court cannot redetermine Collins' guilt or innocence or substitute its own judgment for that of the RIB. Collins' disciplinary conviction was supported by "some evidence" and was consistent with due process.

Furthermore, the Complaint demonstrates that the prison met other, minimal due process requirements relating to Collins' disciplinary conviction, such as advance written notice of the charges at least twenty-four hours prior to the disciplinary hearing (*see* Doc. 1-5, Ex. E (conduct Report)); a written statement of the evidence relied on and the reasons for the disciplinary action (*see id.*); and the ability to call witnesses and present documentary evidence in his defense (*see* Doc. 1 at 18). *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). Collins, therefore, has failed to state plausible due process claims.

### 2. Equal Protection

The Complaint does not allege a plausible equal protection claim, either. Inmates are not a suspect class and the Equal Protection Clause does not prohibit prison officials from treating

9

different groups of inmates in different ways. *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005). An inmate asserting an equal protection violation must demonstrate not only that he was treated differently from others similarly situated to him in all respects, but that the different treatment was not rationally related to any legitimate government interest. *Heard v. Quintana*, 184 F. Supp. 3d 515, 522 (E.D. Ky. 2016).

Collins complains that prison officials treated the informant more favorably than him because they investigated and pursued the informant's allegations of misconduct against him, but not allegations Collins made against the informant about his false reports. (*See, e.g.*, Doc. 1 at 21.) But Collins has not alleged facts plausibly suggesting there was no rational basis for the prison officials' investigatory decisions. As the Sixth Circuit has observed, "[t]hreats to prison security presumably demand more immediate attention that the threats presented by other categories . . . ." *Harbin-Bey*, 420 F.3d at 577. Further, Collins has not alleged facts indicating that he was similarly situated to the informant in all respects.

Collins' allegations, therefore, are insufficient to support a plausible equal protection claim because they do not support a plausible inference that he was treated differently than the informant without any rational basis.

### 3. Retaliation

Finally, Collins asserts that Deputy Wardens Foley and Gillece and Investigator Weishar retaliated against him for "speaking out against" the informant. However, "[w]here disciplinary charges result in guilty findings supported by some evidence, a prisoner cannot state a claim of retaliation." *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998); *see also Mujihad v. Harrison*, No. 97-6366, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998)

(holding that a plaintiff's retaliation claim "is blocked by the disciplinary board's findings of guilt" and that he had "not presented sufficient evidence to support a substantive due process claim" because "the only evidence" he offered of retaliation was that disciplinary charges against him "occurred relatively close in time to his filing of grievances"). Because some evidence supports the RIB's determination of Collins' guilt of the escape violation, Collins has failed to allege plausible retaliation claims arising from the disciplinary charges against him.

## CONCLUSION

Accordingly, Collins' Complaint is barred by the statute of limitations and fails to allege any plausible constitutional claim upon which he may be granted relief under 42 U.S.C. §1983, and is therefore dismissed pursuant to 28 U.S.C. § 1915A. Collins' request for preliminary and permanent injunction is also denied as the court finds Collins has no likelihood of success on the merits of any of his claims. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 632 (6th Cir. 2000) (upholding denial of motion for preliminary injunction where the plaintiff has no likelihood of success on the merits).

The Court further certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith.

       IT IS SO ORDERED.

                                      s/ Christopher A. Boyko
                                      CHRISTOPHER A. BOYKO
DATED: March 21, 2019            UNITED STATES DISTRICT JUDGE